UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X     09CV3162 (CM)(HBP)

SEAN THOMAS,

        Plaintiff,

   -against-


THE CITY OF NEW YORK, SERGEANT STEPHEN
KELLY, shield #2057, POLICE OFFICER BRIAN SHEA,
shield #13360, POLICE OFFICER MICHAEL MORENO,
shield #5339, POLICE OFFICER LENNOX CORLETTE,
shield #2845, POLICE OFFICER OSCAR PEREZ,
shield #7650, POLICE OFFICER MICHAEL MCAULLIFE,
shield #1676, POLICE OFFICER THOMAS DEKOKER,
shield #15364, POLICE OFFICER ANGELA
POLANCOBRITO, shield #4956, SERGEANT SASHA
ROSEN, shield #5061  POLICE OFFICERS JANE/JOHN
DOE,

        Defendants.

-------------------------------------------------------------------X



## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION IN LIMINE

**PRELIMINARY STATEMENT**

This memorandum of law is submitted in support of the plaintiff's motion in limine for an order precluding certain witnesses from testifying in this matter at time of trial, excluding defendants from offering certain exhibits in this matter at time of trial, redacting portions of the St. Barnabas Hospital chart which the parties intend to offer into evidence in this matter at time of trial and precluding defendants from advancing certain legal arguments in this matter at the time of trial.

**STATEMENT OF FACTS**

Plaintiff SEAN THOMAS ("THOMAS") alleges he was arrested on December 20, 2008, at approximately 2:00 A.M., at 1748 Eastburn Avenue, Bronx without probable cause.  In sum, police were called to the scene by a landlord's son as a result of an argument in another apartment in the same building.  Police arrived and soon thereafter took plaintiff into custody with several neighbors and the landlord's family looking on. Photos of much of the incident, including plaintiff laying facedown in the snow with officers stepping on his hair, were captured by a professional photographer.  Plaintiff was placed in handcuffs and transported to a hospital. At the hospital, officers left without saying anything to any doctor about plaintiff.  No charges were brought as a result of the incident.  Plaintiff sustained a fractured hand as police hit his hand with an object to remove him from a fence.  No police paperwork was created by the arresting officer regarding the incident, i.e. no arrest report or any police documentation indicating the reason for this arrest. Plaintiff asserts false arrest and excessive-force claims under 42 U.S.C.§1983 and New York law, and an assault and battery under New York law.

## ARGUMENT

## THREE OF THE DEFENSE WITNESSES
## SHOULD BE PRECLUDED FROM TESTIFYING

According to the Joint Pre-Trial Conference Order (JPTO), Defendants intend to call Sergeant Radames Tirado, Lara B. Goldfeder, M.D. and an unnamed EMT crew.  Plaintiff objects to these witnesses.

By disclosing Sergeant Radames Tirado and Lara B. Goldfeder, M.D., Defendants are in violation of the well-settled discovery obligations of Rule 26 of the Federal Rules of Civil Procedure.  Rule 26(a) requires the disclosure of witnesses and documents with information relevant to the issues alleged in the complaint.  Fed. R. Civ. P. 26(a); *see Bynum v. Metro. Transp. Auth.*, No. 01 CV7945 (CLP), 2006 U.S. Dist. LEXIS 98617, at *3-4 (E.D.N.Y. Nov. 21, 2006).  Rule 26 also provides that there is a duty to supplement discovery responses if it later becomes known that a response is incorrect or incomplete, unless the information has otherwise been made known to the party during the discovery process. Fed. R. Civ. P. 26(e).  A party who fails to comply with Rule 26 "is not permitted to use such information as evidence, unless there is substantial justification provided for the failure and such failure is harmless." Fed. R. Civ. P. 37(c); *Bynum*, 2006 U.S. Dist. LEXIS 98617, at *4; *see also Spotnana, Inc. v. American Talent Agency, Inc.*, No. 09 Civ. 3698 (LAP), 2010 U.S. Dist. LEXIS 86457, at *2 (S.D.N.Y. Aug. 17, 2010); *Rojo v. Deutsche Bank*, No. 06 Civ. 13574 (HB), 2009 U.S. Dist. LEXIS 110848, at *13-16 (S.D.N.Y. Oct. 30, 2009).   The purpose of this rule is "to prevent one party from 'sandbagging' an opposing party with new evidence." *Thieriot v. Jaspan Schlesinger Hoffman,*

*LLP*, No. CV 07-5315 (TCP)(AKT), 2010 U.S. Dist. LEXIS 105599, at *11 (S.D.N.Y. Sept. 30, 2010)(citing *Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000)).

On or about October 6, 2009, Defendants' counsel served their initial disclosures pursuant to Rule 26(a), which disclosed several witnesses, but did not include Sergeant Radames Tirado nor Lara B. Goldfeder, M.D.  Thereafter, Defendants supplemented their response eight times, the last one on or about February 19, 2010.  These witnesses were not disclosed in any of those responses.  These witnesses were not disclosed to Plaintiff prior to the JPTO.

In light of the fact that these witnesses were not disclosed to Plaintiff, they should be excluded from this trial.  Preclusion of evidence pursuant to Rule 37(c) does not require a showing of bad faith by the non-disclosing party. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).  Preclusion is especially appropriate in the instant case due to the substantial prejudice to Plaintiff who did not have the opportunity to depose these witnesses.  The discovery period has long been closed.

Plaintiff strongly opposes the reopening of discovery at this late stage of the litigation as the delay of the trial necessitated thereby would be substantially prejudicial. Yet, to avoid prejudice from unknown testimony during trial, Plaintiff should be afforded an opportunity to depose these new witnesses. Plaintiff is in a conundrum not of his own making.

Should Defendants seek to cure this situation by seeking the Court's permission to allow for the reopening of discovery to allow for these depositions, it is Plaintiff's position that this application should be denied. The "party seeking to reopen discovery bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the evidence during discovery." *Durakovic v. Bldg. Serv. 32B-J Pension Fund,* 642 F.

Supp. 2d 146, 155 (E.D.N.Y. 2009).  Courts apply the following six-part test to analyze a request
to reopen discovery:

> (1) whether trial is imminent; (2) whether the request is
> opposed; (3) whether the non-moving party would be
> prejudiced; (4) whether the moving party was diligent in
> obtaining discovery within the guidelines established by the
> court; (5) the foreseeability of the need for additional
> discovery in light of the time allowed for discovery by the
> district court; and (6) the likelihood that the discovery will
> lead to relevant evidence.

*Thieriot*, 2010 U.S. Dist. 105599, at *15-16.  It is Plaintiff's position that Defendants could not

satisfy the above analysis.  As this Court is aware, the trial is imminent.    Defendants had ample

opportunity to disclose these witnesses during the discovery period since Defendants served nine

separate Rule 26 responses, the last of which on or about February 19, 2010, that would have

allowed ample time for Plaintiff to conduct depositions prior to the close of discovery. Without

knowing more, Plaintiff would not be able to speculate about whether the discovery would lead

to relevant evidence.

Further, with regard to the testimony of Sergeant Radames Tirado, Plaintiff cannot

foresee any potential reason to call this witness. Defendants state in the JPTO that Sergeant

Tirado is expected to testify "for foundation/authentication purposes **only** regarding the Internal

Affairs interview of plaintiff."(emphasis added)  It is Plaintiff's position that such evidence can

be admissible pursuant to Rule 803 without the need for a witness to lay a foundation.

Lastly, in the JPTO, Defendants indicate that they intend to call EMT Crew "expected to

testify as to his observations of plaintiff on December 20, 2008."    Despite the fact that

Defendants provided the names of several different EMT personnel through their Rule 26

4

disclosures, Defendants are being vague with regard to who they actually intend to call. Plaintiffs are entitled to know exactly who is being called to testify to avoid surprise and ambush at trial.

## CERTAIN OF DEFENDANT'S EXHIBITS SHOULD BE EXCLUDED

### A. 911 Audio (Defendants' Exhibit E)

The evidentiary objection to the admissibility of this call is that it is hearsay. It does not fall within the business record exception because the caller is not under a business duty to call 911. See, *United States v. Kuo*, 84 Fed. R. Evid. Serv. (Callaghan) 677.  It also does not fall within the present sense impression or excited utterance exceptions. See, *Brown v. Keane*, 355 F.3d 82 (2d Cir. N.Y. 2004).  The caller, Ravi Sookraj, identified on the tape only as Ravi, is on the witness list for both Plaintiff's and Defendants' cases in chief.  Therefore, there will be live testimony as to what he observed and/or heard the night of the occurrence. Pursuant to his deposition testimony, Ravi Sookraj testified that the reason for his call was "because there was a lot of noises, like arguing going on. I just wanted to, you know, check it out." (D Transcript P 19 L7-9) "I remember we were home and there was some noise upstairs.  We live on the first floor. And I think we had called the Police Department just to make sure everything was fine…" (D Transcript P 9 L 17-20). "Well, we were home.  There was some noise upstairs, sounds like some maybe arguing, screaming back and forth.  And at that point I think we had called the 911 just to get some officers, to make sure everything was fine, calm everything down, whatever the case maybe." (D Transcript P 15 L15-19).  When asked where he was when he heard the noise, Ravi responded, "I think I was in my living room." " It was over me." (D Transcript P 17 L 24, P18 L3). There is no testimony that Ravi observed anything prior to the police officers arriving.

However, if the Court finds that portions of the tape are an excited utterance or a present sense impression, those portions that do not fall into those categories must be redacted as hearsay. *United States v. Lewis*, 2012 U.S. Dist. LEXIS 60769 (E.D.N.Y. May 1, 2012)

**B. IAB and CCRB interviews of Plaintiff Sean Thomas and Letitia Marrow (Defendants' Exhibits F, G, H and I)**

The evidentiary objection to the admissibility of these taped interviews is that they are hearsay. Furthermore, these interviews serve no purpose other than to bolster the testimony of these individuals. Since both Thomas and Marrow will be testifying at trial, there is no need to introduce interviews that will be merely cumulative.

**C. Photographs of the front exterior, side exterior and interior lobby of 1748 Eastburn Avenue, Bronx, New York (Defendants' Exhibits J, K and L)**

As argued above with respect to the application to preclude the testimony of Sergeant Radames Tirado and Lara B. Goldfeder, M.D., Defendants should be precluded from introducing photographs that have not been exchanged during discovery because Defendants are in violation of Federal Rule 26(a). As previously stated, Defendants' initial disclosure was served on or about October 6, 2009. Since that time, Defendants served eight supplemental disclosures and never produced photographs that they intended to use at trial. Since Defendants never disclosed the photographs for the purposes of discovery during the last two years, the photographs should be excluded from trial. The discovery period is now closed. Defendants offer no substantial justification for their delay and the potential for prejudice to the Plaintiff is extremely high. *See* Fed. R. Civ. P. 37(c); *Bynum*, 2006 U.S. Dist. LEXIS 98617, at *4; *see also Spotnana, Inc. v. American Talent Agency, Inc.*, No. 09 Civ. 3698 (LAP), 2010 U.S. Dist. LEXIS 86457, at *2

(S.D.N.Y. Aug. 17, 2010); *Rojo v. Deutsche Bank*, No. 06 Civ. 13574 (HB), 2009 U.S. Dist.

LEXIS 110848, at \*13-16 (S.D.N.Y. Oct. 30, 2009).

**D. Sprint Report**

The evidentiary objection to the admissibility of this report is that it is hearsay and lacks

foundation. It does not fall within the business record exception because the caller is not under a

business duty to report the information to the 911 operator. *United States v. Kuo*, 2011 WL

145471 (EDNY 2011) Furthermore, defendants have not noticed a witness to interpret the codes.

Without such a witness it cannot be determined whether the information contained therein is

relevant.   In addition, its probative value is substantially outweighed by the likelihood that it will

lead to confusion of the issues.

### CERTAIN PORTIONS OF THE HOSPITAL CHART SHOULD BE REDACTED

Although hearsay, it is well-settled that medical records themselves can be admissible as

business records under Federal Rule of Evidence 803(6), provided they are prepared in the

regular course of business, near the time of occurrence, by a person with knowledge and are

properly authenticated. *Hodges v. Keane*, 886 F. Supp. 352, 356(S.D.N.Y. 1995) (citing *Romano*

*v. Howarth*, 998 F.2d 101, 108 (2d Cir.1993)); see *Pace v. Nat'l R.R. Passenger Corp.*, 291 F.

Supp. 2d 93, 102 (D. Conn. 2003).

Nothwithstanding, much of the information and documentation contained within the

records remain hearsay (and therefore inadmissible) unless they fall within another hearsay

exception.  Federal Rule of Evidence 803 (4) provides just such an exception and allows for the

admissibility of statements made by the patient to the medical and mental health professionals

and contained within the record provided they were recorded for purposes of diagnosis and

treatment. *Hodges*, 886 F. Supp. at 356; see Fed. R. Evid. 803(4) Statements that relate to the cause of an injury are admissible hearsay if "reasonably pertinent to a physician in providing treatment." *Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir. 1986); see *King v. Brandtjen & Kluge, Inc.*, No. 94 Civ. 411C (M), 2001 U.S. Dist. LEXIS 21102, 2001 WL 1804345, at *9 (W.D.N.Y. June 20, 2001).

It bears noting that Federal Rule of Evidence 803 (4) provides a very limited exception to the hearsay rule since it applies only to statements made by the patient to a medical provider. It does not extend to statements between physicians. *Field v. Trigg County Hospital, Inc.*, 386 f. 3D 729, 736 (6th Cir. 2004) (statements made by consulting physicians to the treating physician). It does not even cover statements by a doctor or other medical personnel to the patient. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F. 3d 560, 564 (7th Cir. 1996); *Bulthuis v. Rexall Corp.*, 789 F. 2d 1315, 1316 (9th Cir. 1985) Rule 803(4) applies only to statements made by the patient to the doctor, not the reverse. Therefore, it certainly does not apply to those notations in the record that reflect mere observations by unknown individuals that are not "reasonably pertinent to medical diagnosis and treatment."

As such, portions of pages NYC 1, 2, 4, 8 and 11 of the St. Barnabas Hospital chart, indicated on the JPTO as Plaintiff's Exhibit 1 and Defendants' Exhibit A, should be redacted as per the annexed proposed pages of the chart. (For easy reference an un-redacted copy will follow each proposed redacted page)

In addition to being unreliable, the probative value of whatever observations were made at the hospital with regard to Sean Thomas' behavior or appearance upon admission to the emergency room are outweighed by their prejudicial effect. Such observations are irrelevant to

8

the issues in this case since the Defendants claim that the alleged probable cause to detain Sean Thomas existed prior to the hospital admission.

## ANY REFERENCE TO PLAINTIFF'S PRIOR CRIMINAL HISTORY SHOULD BE EXCLUDED

It is well settled that any criminal history that goes beyond ten years is not admissible. See *Edwards v. City of New York*, 2011 U.S. Dist. LEXIS 75300 (E.D.N.Y. July 13, 2011) (criminal history that goes beyond the last 10 years is not admissible because its prejudicial effect outweighs the probative value), *Jean-Laurent v. Hennessy*, 2011 U.S. Dist. LEXIS 122767 (E.D.N.Y. Oct. 24, 2011) (in limine preclusion of plaintiff's criminal history that goes beyond 10 years.) Plaintiff Sean Thomas' prior convictions date back to 1996 or prior thereto and are, therefore, inadmissible.

Furthermore, recent criminal history that is not relevant to the present dispute should be excluded as well, especially if it is prejudicial, as it is here. "The Second Circuit has long held that trial judges have broad discretion in making determinations under FRE 609 and that the "[p]rime" factor to be considered is the probative value of the prior conviction as to the witness' truthfulness." *Nibbs v. Goulart*, 2011 U.S. Dist. LEXIS 106998, 6-7 (S.D.N.Y. Sept. 16, 2011) (quoting *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971); *Rosario v. Ercole*, 582 F. Supp. 2d 541, 558-59 (S.D.N.Y. 2008)). Plaintiff Sean Thomas has a sealed robbery case from 2005 that was dismissed and for which plaintiff claims no involvement. Defendants should be precluded from questioning Plaintiff regarding this arrest since its probative value is outweighed by the prejudice to the Plaintiff. It is not probative as a bad act since Plaintiff was not involved.

## ANY OPINION TESTIMONY BY POLICE OFFICERS REGARDING WHETHER PLAINTIFF WAS AN EDP OR HAD COMMITTED A CRIME SHOULD BE PRECLUDED

There are numerous police officers who will be testifying during trial regarding their observations and conduct at the time of the occurrence which is the subject matter of this lawsuit. These police officers should not be permitted to testify as to whether or not in their opinion Plaintiff Sean Thomas was an Emotionally Disturbed Person (EDP) or had committed a crime such that there was probable cause for his detention.  Such testimony is in the form of a legal conclusion and "undertakes to tell the jury what result to reach, and thus attempts to substitute the [witness's] judgment for the jury's."  See, *Cameron v. The City of New York*, 598 F.3d 50, (2d Cir. 2010).

## ANY TESTIMONY IN SUPPORT OF DEFENDANTS' ARGUMENT THAT THE ARREST OF SEAN THOMAS IS PRIVILEGED PURSUANT TO N.Y. MENTAL HEALTH LAW § 9.41 SHOULD BE PRECLUDED

Since there was no investigation at the time of the arrest to determine whether the Plaintiff was an Emotionally Disturbed Person (EDP) and because the conduct and testimony of the officers do not show compliance with any aspect of N.Y. Mental Hygiene Law § 9.41, defendants should be precluded from alleging that the arrest was privileged pursuant to that statute. Here, it is undisputed that plaintiff was taken into police custody and involuntarily hospitalized on December 20, 2008. The inquiry then becomes whether this detention was privileged under N.Y. Mental Hygiene Law § 9.41.  See, *Bayne*, 2005 U.S. Dist. LEXIS 40889, at *15-16.   The Mental Hygiene Law provides in relevant part:

> Any peace officer...may take into custody any person who appears
> to be mentally ill and is conducting himself or herself in a manner

which is likely to result in serious harm to the person or others.
Such officer may direct the removal of such person or remove him
or her to any hospital specified in subdivision (a) of section 9.39 or
any comprehensive psychiatric emergency program... temporarily
detain any such person in another safe and comfortable place, in
which event, such officer shall immediately notify the director of
community services or, if there be none, the health officer of the
city or county of such action.

N.Y. Mental Hygiene Law § 9.41. (emphasis added)

In *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004), the Second Circuit held that
the plaintiff "had a right not to be detained or involuntarily hospitalized by an officer who (on
Kerman's version of the facts) did not know, and who patently ignored opportunities to
determine, the seriousness of Kerman's condition and whether he was dangerous to himself or
others." Id. at 111. *Kerman* stands for the proposition that the duty to investigate is of great
importance. See, *Panetta v. Crowley*, 460 F.3d 388 (2d Cir. 2006) (applying *Kerman*, the court
found that the officers had probable cause to detain an emotionally disturbed person after
verifying two complaints via a thorough investigation). See also, *Bayne*, 2005 U.S. Dist. LEXIS
40889, at *9 n. 6 (citations omitted) (any misunderstanding by the officer of her authority to
arrest pursuant to Mental Hygiene Law § 9.41 was immaterial to the court because the officer
had thoroughly investigated the substance of a 911 call, which alleged that the arrestee was
suicidal, prior to taking the arrestee into custody).

Although there is no bright line rule for determining whether someone is an "EDP," there
are certain factors that were relevant in the Second Circuit's evaluation of the arrest. The factors
the *Kerman* court viewed as relevant included: the state of the apartment (whether it was
messy), the arrestee's demeanor (which was disputed between the parties), the degree of inquiry

11

into the arrestee's psychological background, that arrestee was off his medication, that there was

an allegation of a weapon, and whether the complaint against the arrestee was verified.   In

addition, another relevant factor is the degree of intoxication of the arrestee.  See, *Burdick v.*

*Johnson*, 2009 U.S. Dist. LEXIS 51029 (N.D.N.Y. June 17, 2009) (hospitalization was

warranted where arrestee claimed to have a gun, was highly intoxicated, and called 911 in order

to threaten to kill a police officer if the officer came back to the arrestee's home).   Arrests

pursuant to Mental Hygiene Law § 9.41 seem justified in circumstances where the arrestee has a

known psychological history and presents a deadly threat to himself or others.  See, *Vallen v.*

*Connelly*, 2004 U.S. Dist. LEXIS 4490 (S.D.N.Y. Mar. 19, 2004) (the court upheld the arrest and

involuntary hospitalization where the arrestee, a known schizophrenic, refused to comply with

the conditions of his release from prior psychiatric hospitalization and had made an anonymous

phone call stating he would kill himself or anyone that came to take him back to the hospital).

Based upon the undisputed facts of this case, no reasonable jury could conclude that

plaintiff represented a serious threat to himself or others as defined by the statute at any time

before he was taken into custody.   According to the testimony of the officers on the scene, SGT.

KELLY independently determined THOMAS to be an EDP and ordered the officers to take him

into custody.  SGT. KELLY testified that he decided to arrest THOMAS "because he was yelling

and screaming in such a manner that it led me to believe that there was a psychiatric issue," due

to the early hour of the morning, and that "he would benefit from a psychiatric evaluation."

SGT. KELLY admitted that he did no investigation into whether THOMAS had any psychiatric

history. It is undisputed that THOMAS did not hit, strike, or do anything physical to anyone

prior to being placed under arrest.  No witness had complained about plaintiff or claimed to have

been threatened by him.  In fact, no person had told police anything other than the existence of an argument.  There was no allegation at any point that plaintiff was armed. No witness claimed to have been threatened by plaintiff.   In addition, the officers all testified that they did not conduct any investigation into plaintiff's psychiatric or criminal history at any time, both before and after arrest.  The record in this case does not reveal any notifications of the arrest as the statute requires.

An officer's investigation prior to arresting someone as an EDP must be reasonable. *Kerman*, 374 F.3d at 100.  Here the officers admittedly did not conduct any investigation whatsoever before they grabbed plaintiff, placed him under arrest, and, in the process, cause a fractured hand requiring treatment.  Plaintiff does not have any psychiatric history, a fact that the officers neglected to even inquire about. Additionally, plaintiff was not suspected of being armed. Cf., *Burdick*, 2009 U.S. Dist. LEXIS 51029; *Vallen*, 2004 U.S. Dist. 4490.  According to all of the officers' testimony, at no point prior to being arrested did THOMAS physically interact with the officers.  Although plaintiff disputes the officers' allegations that he attempted to kick them after he was placed in custody, any such facts are irrelevant to the inquiry at hand because they occurred after plaintiff was already taken into custody.  *Zellner*, 494 F.3d at 369 (probable cause is based on the information known to the officers at the time of arrest); *Kerman*, 374 F.3d at 116 (probable cause and qualified immunity in the context of forced hospitalization pursuant to Mental Hygiene Law § 9.41 revolve around the reasonableness of the arresting officers' knowledge of the arrestee's mental state at the time of arrest); *Burdick*, 2009 Dist. LEXIS 51029, at *16-17 (assessing the reasonableness of officers' determination to take someone into custody for a psychiatric evaluation depends on the facts known to the officers at the time of the arrest).

Defendant Officers' allegations that plaintiff was yelling, appeared agitated, and refused to leave the place where he was residing cannot form the basis for an privileged arrest pursuant to Mental Hygiene Law § 9.41. No reasonable fact finder could find that plaintiff was suicidal, a danger to himself, manifesting a homicidal intent, or placing others in reasonable apprehension of serious physical harm. Overall, merely being loud or upset cannot be a basis for an arbitrary arrest. Nor can refusing to leave the place where you live. Without the risk of serious harm or any investigation into the arrestee's psychological history, an arrest cannot be privileged under Mental Hygiene Law § 9.41. *Kerman*, 374 F.3d at 100.

Even if the Court finds that there could be a basis to arrest the plaintiff as an EDP, what transpired after plaintiff was arrested confirms a blatant non compliance with Mental Hygiene Law § 9.41. The statute requires that if a person will be held pending a psychiatric evaluation, they must be held under "safe and comfortable" conditions. Here it cannot be and in fact was not disputed that plaintiff was detained face down in the snow and ice for several minutes while EMS officers were summoned to the scene. In addition, Officer MCAULIFFE testified that he stood on THOMAS' foot or leg for at least ten minutes while waiting for the ambulance to arrive. No reasonable interpretation of the phrase "safe and comfortable" conditions could encompass standing on an individual after forcing him to lie face down in snow and ice. Therefore, there can be no pretense that the officers were at all concerned with THOMAS' welfare, which further belies their claim that THOMAS was an EDP. Therefore, MHL 9.41 is not available to defendants as a privilege justifying this arrest.

As indicated by the records from St. Barnabas Hospital on the date of the incident, no psychiatric evaluation was ever conducted of the plaintiff. No determination was made by any

mental health provider whether plaintiff was, in fact, a danger to himself or others as required by Mental Hygiene Law § 9.41. None of the pertinent officers made even minimal efforts-such as speaking with a doctor or member of the hospital staff-to ensure that he be afforded such an evaluation. Mental Hygiene Law § 9.41 provides a privilege for arrests "for the purposes of a psychiatric evaluation" when an individual is a threat to himself or others. See, e.g., *Vallen v. Connelly*, 2004 U.S. Dist. LEXIS 4490, at *23 (S.D.N.Y. Mar. 19, 2004) (citing *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993)). Logic, statutory interpretation and policy considerations all lead to the conclusion that, because no psychiatric evaluation was conducted at the hospital or requested by the officers, the procedure for arresting an EDP was not followed and the privilege defendants rely upon is unavailable.

"[T]he Fourth Amendment requires an official to have probable cause to believe that a person is dangerous to himself or others before he can seize and detain such person for a psychiatric evaluation." *Vallen*, 2004 U.S. Dist. LEXIS 4490, at *23 (citing *Glass*, 984 at 58). See also, *Burdick*, 2009 U.S. Dist. LEXIS 51029, at *15-16 (citing, *Glass*, 984 F.2d at 58; quoting *Hoffman*, 41 F. Supp. 2d at 209) ("The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others.").

Overall, plaintiff was deprived of his substantial liberty interest without constituting a threat to himself or others and without any intention to be evaluated by a psychiatrist. *Vitek*, 445 U.S. at 491; *Glass*, 984 F.2d at 57; *Burdick*, 2009 U.S. Dist. LEXIS, at *15-16; *Vallen*, 2004 U.S. Dist. LEXIS 4490, at *23. For those reasons stated above, defendants should be precluded

from advancing the theory at trial that the arrest of THOMAS was privileged under N.Y. Mental

Hygiene Law § 9.41.

## **CONCLUSION**

Pursuant to the above stated grounds, it is respectfully requested that this Motion in

Limine be granted in its entirety.

Dated: New York, New York
   June 6, 2012

RYAN H. ASHER
ASHER & ASSOCIATES, P.C.
111 John Street, Suite 1200
New York, New York 10038
(212) 227-5000
(212) 227-7117 (fax)

*Attorneys for Plaintiff*
*Sean Thomas*