UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

Sean Thomas,                                    :

                                    Plaintiff,  :

                                                :      1:09-cv-3162 (ALC)
              -against-                         :
                                                :      OPINION & ORDER
                                                :
The City of New York et al.,                    :
                                                :
                                    Defendants, :
                                                :
--------------------------------------------------------------x

*1-26-16*

ANDREW L. CARTER, JR., United States District Judge:

## I. INTRODUCTION

Plaintiff Sean Thomas moves for attorneys' fees and costs under 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d)(1) after the close of a second § 1983 trial arising out of his arrest by members of the New York Police Department. The defendants oppose that motion and instead urge the Court to grant them attorneys' fees and costs as a sanction for Thomas's misconduct in the first trial that resulted in a vacated verdict. For the reasons that follow, the Court grants in part Thomas's application and denies the defendants' motion for sanctions.

## II. BACKGROUND

A previous Order in this matter relayed the facts leading to Thomas's § 1983 lawsuit. See Thomas v. City of New York, 293 F.R.D. 498, 500 (S.D.N.Y. 2013). This Order assumes familiarity with that summary. More relevant to the issue of attorneys' fees currently before the Court is this matter's procedural history.

On April 1, 2009, Thomas filed a § 1983 lawsuit against the defendants. In July 2012 a jury found defendant Stephen Kelly liable for false arrest and defendants Kelly, Thomas Dekoker, and Michael McAuliffe liable for excessive force. On October 23, 2012, the Court

denied the defendants' post-trial motion for judgment as a matter of law and a new trial. Thomas v. Kelly, 903 F. Supp. 2d 237 (S.D.N.Y. 2012). The defendants filed a notice of appeal with the Second Circuit on November 15, 2012. Thomas v. City of New York, 293 F.R.D. at 503.

Four days later, on November 19, 2012, Thomas's attorneys informed the Court by letter that they had learned of a contingency agreement between their client and a trial witness. In exchange for the witness's testimony at trial, Thomas had agreed to share a portion of any award he recovered. If Thomas lost the case, the witness agreed to pay a portion of his legal fees and wipe out prior private debts between the two. Id. at 501-503. The agreement was dated June 24, 2012 and signed and notarized on June 30, 2012, three days before the witness testified in Thomas's first trial. Id. at 501.

Less than a week after receiving the letter from Thomas's counsel, on November 23, 2012, the defendants moved in this Court for vacatur of the verdict and judgment and dismissal with prejudice of Thomas's claims, or, in the alternative, a new trial. Id. at 501. Simultaneously, the parties continued to litigate the defendants' previously filed appeal. On April 4, 2013, the Second Circuit remanded the case for consideration of the defendants' motion for a new trial. Id. at 503.

By order dated June 4, 2013, this Court granted defendants' motion for a new trial. Id. at 507. That order found that Thomas had committed knowing and intentional misconduct as described in Fed.R.Civ.P. 60(b)(3), which prohibits "fraud . . . misrepresentation, or misconduct by an opposing party." Id. at 505-506. Thomas appealed that order and the Second Circuit dismissed his appeal on September 30, 2013. Declaration of Raju Sundaran, Exh. Q, ECF No. 212.

After a second trial, commenced on March 9, 2015, a verdict was again returned in Thomas's favor. The parties attempted to negotiate attorney's fees, but reached an impasse, resulting in the dueling motions currently before the Court.

## III.   DISCUSSION

Under 42 U.S.C. § 1988(b) "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." Notwithstanding that § 1988 "refers to the award as discretionary, a prevailing plaintiff is in fact entitled to fees 'unless special circumstances would render such an award unjust' in light of the congressional goals underlying enforcement of fee awards in civil rights litigation." Lyte v. Sara Lee Corp., 950 F.2d 101, 103 (2d Cir. 1991) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)). "The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437.

Thus, in order to recover his attorneys' fees, Thomas must establish first that he is a prevailing party not subject to special circumstances that would render awarding fees unjust. He must then establish that the amount he seeks to recover is reasonable. The Court finds that while Thomas is a prevailing party within the meaning of § 1988, his intentional misconduct at his first trial renders a fee award for work related to that trial unjust. Further, certain expenses claimed by Thomas are unreasonable or otherwise not permitted by law. Below, the Court explains its reasoning.

### A.      Thomas is the prevailing party.

"A plaintiff is a prevailing party in the litigation within the meaning of § 1988 if she has 'received actual relief on the merits of h[er] claim . . . .'" Gierlinger v. Gleason, 160 F.3d 858, 880 (2d Cir. 1998) (citing Farrar v. Hobby, 506 U.S. 103, 111 (1992)). Defendants argue that because the verdict from Thomas's first trial was vacated, he was not the prevailing party for that portion of the case and therefore should not receive fees for services related to the first trial or its appeal as a matter of law.

Gierlinger makes clear, however, that "a § 1983 plaintiff's eligibility for an award of fees under § 1988 does not depend on her success at interim stages of the litigation, but rather depends on the ultimate outcome of the litigation." Id. Gierlinger addressed a plaintiff's fee application on a matter that ultimately encompassed three trials. Id. at 863. The first trial resulted in a verdict in favor of the plaintiff that was vacated on appeal while the second one ended in a mistrial. Id. at 867. On the third trial, the jury again returned a verdict in favor of the plaintiff. Id. at 868. Nonetheless, the Second Circuit awarded the plaintiff's attorney's fees for work related to the first trial and her unsuccessful challenge to its appeal because "the proper inquiry is not whether Gierlinger's efforts on the appeal itself were successful, but rather whether, in light of the circumstances of the litigation as a whole, those efforts were reasonable." Id. 880. Defendants' objections to fees for work on the first trial are thus properly directed at whether such work was reasonable.

Simply put, prevailing party status is judged by the ultimate outcome of all litigation in a matter, rather than by the outcome of discrete phases of the litigation. At the close of Thomas's second trial, the jury returned a verdict in his favor. Thomas is thus the prevailing party in this litigation.

**B.    The Court declines to award fees for services related to the first trial**

4

**rendered after the commission of Thomas's misconduct.**

Prevailing party status alone, however, does not decide the question of attorney's fees. Rather, there may exist "special circumstances [that] would render such an award unjust." Hensley, 461 U.S. at 429. Thomas's intentional misconduct in this case is one of those "special circumstances" that would render his total requested award of attorneys' fees unjust.

The Second Circuit has "established a two-step test for courts to apply when considering whether special circumstances make it appropriate to deny attorneys' fees." Raishevich v. Foster, 247 F.3d 337, 344 (2d Cir. 2001). Under that test, courts "must make an initial determination whether 'the plaintiff's claim was so strong on the merits and so likely to result in a substantial judgment that counsel in similar cases could be easily and readily retained.'" Id. (quoting Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir.1982)). "The test is thus objective, turning on the likely response of the bar, rather than subjective, turning on the district judge's own view of the merits." Kerr, 692 F.2d at 878.

If the plaintiff's case satisfies this requirement, a court "may use its discretion to deny fees if, in light of all of the circumstances and the size of recovery, an award of such fees might work an injustice." Raishevich, 247 F.3d. at 344-45 (internal quotations omitted). That second, discretionary decision "will turn on the usual factors such as the award of punitive damages, the amount of compensatory damages, the degree and measurability of harm to the plaintiff, and the public interest in the particular claim." Kerr, 692 F.2d at 878.

The Kerr test effects Congress's purpose in passing § 1988: to financially incentivize the bringing of meritorious civil rights claims. Kerr, 692 F.2d at 877. Yet surely Congress did not intend to incentivize the bringing of claims, even ultimately meritorious ones, whose victory at trial would be unfairly procured. For this reason, in addition to the nonexhaustive list of "usual

5

factors" recited in Kerr, one of the other "factors entitled to consideration" in a trial court's discretionary decision to award fees under § 1988 is "the presence or absence of any bad faith or obdurate conduct on the part of either party . . . ." Zarcone v. Perry, 581 F.2d 1039, 1044 (2d Cir. 1978). "'Bad faith' is, according to Black's [Law Dictionary], 'not simply bad judgment or negligence, but rather . . . the conscious doing of a wrong because of dishonest purpose or moral obliquity." United States v. Schneider, 395 F.3d 78, 89 n.3 (2d Cir. 2005) (quoting Black's Law Dictionary 139 (6th ed.1990)). In certain cases, where a party acts in bad faith, "Kerr's 'special circumstances' exception to a fee award 'serves as a short-hand way of saying that, even before calculating a lodestar or wading through all the reasonableness factors, it is clear that the reasonable fee is no fee at all.'" Raishevich, 247 F.3d at 346 n.4 (quoting Farrar v. Hobby, 506 U.S. 103, 118 (1992) (O'Connor, J., concurring)). Such is the case here, where Thomas's intentional misconduct substantially interfered with his opponents' ability to fully and fairly present their case at the first trial.

Kerr's first prong is met here. Objectively speaking, the merits of Thomas's claim were strong enough and his probable damages award high enough to readily attract counsel in similar cases. A portion of the undisputed facts recited in an earlier decision from this case are instructive as to this point. A report of a domestic dispute to police from Thomas's downstairs neighbor resulted in the following:

> [B]y around 3:00 a.m., Thomas was handcuffed, wrapped in a restraint blanket, strapped to a stretcher, and transported in an ambulance to receive a psychological evaluation at St. Barnabas Hospital, where he was involuntarily sedated. Thomas woke up around 9:00 a.m. in a bed in the emergency room naked and covered only by a sheet. Thomas was free to leave the hospital, and he was not charged with any crime nor did he receive a summons or a desk appearance ticket.

Thomas, 903 F. Supp. 2d at 245.

Prior to being forcibly transported to the hospital, police had held Thomas face-down in the snow for 45 minutes, standing on his head and legs. Id. at 246. Thomas also suffered a fracture in his right hand resulting from his encounter with the police that evening. Id.

When Thomas sought counsel to assist in bringing a § 1983 claim, he possessed ample proof to bolster his version of the evening's facts. That included evidence of treatment for a fracture while in the hospital, id., and the availability of several corroborating witnesses. See id. 245-248 (describing testimony from neighbors and Thomas's girlfriend from which a trier of fact could reasonably have concluded that Thomas was subject to false arrest and excessive force). Thus, members of the bar besides Thomas's attorneys would likely have taken the case.

Turning now to the discretionary decision as to whether fees should be denied in light of the circumstances of this case, the Court finds that Thomas's bad faith behavior in trying his first claim merits a denial of a portion of the fees he requests. As previously stated, Thomas's contract with a witness to provide testimony at his first trial, combined with his subsequent cover-up of that deal, amounted to an "egregious[] incident of trial misconduct." Thomas, 293 F.R.D. at 507. While the Court's previous decision stopped short of finding Thomas guilty of perpetrating a fraud, it noted that he took "conscious steps to hide [the agreement] from Defendants' attention" and "remained quiet despite his ongoing duty to disclose documents that 'relate to the Incident, claims and subject matter of this litigation.'" Thomas, 293 F.R.D. at 505. Such conduct was more than bad judgment or negligence, instead reflecting conscious wrongdoing, and thus, bad faith. Such bad faith is a special circumstance that justifies a partial denial of fees in this case.

In arguing that his attorney's fees related to the first trial should not be reduced, Thomas begins with Chambers v. NASCO, Inc., 501 U.S. 32 (1991), which held that a district court possesses inherent discretion to sanction a party for bad-faith conduct by assigning it the attorney

fees of the party's opponent. <u>Chambers</u> alone bolsters the defendants' argument, so Thomas cites several cases that he asserts stand for the rule that a court must find that a party engaged in fraud before it may reduce attorney's fees. <u>Quality Tech. Co. v. Stone & Webster Eng'g Co.</u>, 7 F.3d 234 (6th Cir. 1993) and <u>White River Amusement Pub, Inc. v. Town of Hartford, Vt.</u>, 2008 WL 2404029, at *2 (D. Vt. June 10, 2008), in addition to being nonbinding on this Court, address the appropriate standard for a Rule 60(b) motion for relief from a final judgment and are thus inapposite to this case. <u>Gleason v. Jandrucko</u>, 860 F.2d 556 (2d Cir. 1988) also addresses a 60(b) motion alone.

    <u>Kadri v. Johnson</u>, 2005 WL 3454330, at *2-3 (W.D. Tenn. Dec. 16, 2005), on the other hand, denied a motion to reduce fees based on the perjured testimony of a victorious party's witness. The <u>Kadri</u> court found that such behavior was not sufficiently egregious to warrant a reduction because the testimony did not pertain to a material issue and the jury did not rely on it to reach a verdict. <u>Id.</u> at *3. Here, a previous order in this case made clear that "credibility was the very heart of this case. . . . Yet, with straight faces and concealed contract, [the contracting witness] and Thomas testified and the jury credited their testimony rather than the equally plausible tale recounted by the Defendants." <u>Thomas</u>, 293 F.R.D. at 507. The witness testimony offered here was thus so material that the <u>Kadri</u> court may well have considered Thomas's behavior sufficiently egregious to merit a reduction in fees. Suffice it to say, this Court so finds.

    Defendants seek sanctions against Thomas in the form of an award of their attorney's fees incurred in litigation of the first trial. "It is well settled that district courts enjoy wide discretion in sanctioning litigants appearing before them." <u>Novak v. Wolpoff & Abramson LLP</u>, 536 F.3d 175, 177 (2d Cir. 2008). In this case, the Court declines to exercise that discretion to impose sanctions on Thomas. Defendants mistakenly insist that <u>Novak</u> requires sanctions absent

8

a plaintiff's showing of "substantial justification or other circumstances" that would excuse his misconduct. Id. at 178 (quoting Fed. R. Civ. P. 37(b)(2)). Novak addressed a party's failure to appear at a deposition under Rule 37(b) rather than the failure to disclose or supplement under Rule 37(c) at issue here. Rule 37(c) makes clear that sanctions in the latter case are not mandatory by stating that "the court, on motion and after giving an opportunity to be heard *may* order payment of the reasonable expenses, including attorney's fees" (emphasis added).

      The most appropriate remedy for Thomas's misconduct in this case has already been granted: a new trial, at which a jury again found against the defendants for their unlawful conduct. The special circumstance exception, however, makes appropriate a denial of attorney's fees related to the first trial from the date Thomas entered into the agreement with a witness to testify: June 30, 2012. The Court thus denies in full Thomas's motion for attorney's fees related to his first trial from that day. Such fees include preparation for and litigation of the first trial, opposition to the defendants' withdrawn appeal of the first verdict, opposition to the defendants' successful Rule 62.1(a)(3) and Rule 60(b)(3) motions, and appeals from those successful motions. After he engaged in egregious conduct that deprived his opponents of a fair trial, to award Thomas fees for that trial and its associated appeals would be unjust.

### C.      Certain fees requested by Thomas are unreasonable or otherwise impermissible by law.

      Defendants additionally object to several of Thomas's other fee requests as unreasonable. In calculating a reasonable attorney's fee under § 1988, "the district court must first determine the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee.'" Stanczyk v. City of New York, 752 F.3d 273, 284 (2d Cir. 2014) (internal quotations and alterations omitted). "Then,

based on considerations not taken into account in calculating the lodestar, the Court may, in rare circumstances, adjust the lodestar calculation upwards or downwards." Walker v. City of New York, 2015 WL 4568305, at *2 (E.D.N.Y. July 28, 2015).

"The reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008). "An inquiry into the reasonableness of an hourly rate may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" Andrews v. City of New York, 2015 WL 4622489, at *5 (S.D.N.Y. Aug. 3, 2015) (quoting Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 59 (2d Cir. 2012)). It may also reflect consideration of the following nonexclusive factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at n. 3 (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717 (5th Cir. 1974)).

Finally, "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." Barfield v. New York City Health & Hospitals Corp., 537 F.3d 132, 152 (2d Cir. 2008) (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992)). "Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." Id.

Once a reasonable rate is set, a court must determine the reasonable number of hours expended by the attorney. It must therefore "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). "The court is obligated to exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" Andrews, 2015 WL 4622489, at *6 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).

Taking into account the specific circumstances of this case, the fee rates requested by Thomas should be adjusted downward. Further, certain fees claimed by Thomas are unavailable as a matter of law. Nonetheless, with limited exceptions the hours expended by Thomas's attorneys are reasonable.

### a. The requested attorney rates are adjusted downward.

Thomas requests varying fee rates for the group of attorneys who worked on his case over the last six years: David Zelman, Ryan Asher, Chris Soverow, Andrew Rabin, Justin Denton, Matthew Lawrence, Matthew Schommer, Joshua Tey, and Sang J.Sim. Because Sim provided services related to appeals from the first trial and associated motions, the Court denies his fees based on the reasoning above. Of the remaining fee rates, all are reduced downward for the following reasons.

### i. Zelman and Asher's fee rates

For Zelman, who handled the bulk of the casework excluding advocacy at trial, Thomas requests $500 an hour. Zelman was admitted to the New York bar in 1999. Zelman Aff. at ¶ 4. He presently manages a two-lawyer firm in Brooklyn, New York. Id. at ¶ 2. For the last 16 years, he has practiced in civil rights cases in both state and federal courts, concentrating on police misconduct. Id. at ¶ 7. In the hundreds of cases he has handled throughout his career, the

11

majority have settled prior to trial. Id. at ¶ 9. Nonetheless, he has argued several cases at trial and

argued appeals before both the Second Circuit and the New York State Appellate Division. Id.

For Asher, who argued both trials, Thomas requests $600 an hour. Asher was admitted to

the New York bar in 1999. Asher Aff. at ¶ 3. He presently practices with his own five-lawyer

firm, Asher & Associates, P.C. Id. His prior experience includes four years as an Assistant

District Attorney in Bronx County, New York. Id. The Thomas trial was the fifth § 1983 trial in

which Asher served as lead trial counsel.

To begin, the rates requested by lead counsel are above those typically awarded in civil

rights cases in the Southern District of New York. Recent case law lists fees of $400 to $450 an

hour for attorneys with nearly double the experience of Zelman and Asher. See Andrews v. City

of New York, 2015 WL 4622489, at *7 (citing cases). In support of his requested fee rates for

lead counsel, Thomas attaches the "Laffey Matrix," which provides hourly rates for attorneys in

the Washington D.C.-Baltimore area. But "when faced with a request for an award of higher out-

of-district rates, a district court must first apply a presumption in favor of application of the

forum rule." Simmons v. New York City Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009).

"According to the forum rule, courts should generally use the hourly rates employed in the

district in which the reviewing court sits in calculating the presumptively reasonable fee." Id. at

174. "In order to overcome that presumption, a litigant must persuasively establish that a

reasonable client would have selected out-of-district counsel because doing so would likely (not

just possibly) produce a substantially better net result." Id. Thomas provides no argument along

these lines and thus does not overcome the presumption in favor of the forum rule.

Thomas's other arguments for counsels' elevated fee rates are similarly unpersuasive.

Thomas's counsel reiterates the extensive time and labor spent on this case, which was originally

filed eight years ago. However, much of that time and labor was spent supporting the improperly obtained first verdict, whether on trial or appeal, and is thus not an appropriate justification for an elevated fee rate. Counsel also references the general difficulty and risk in suing police officers. That argument would automatically justify elevated fee rates in all civil rights cases containing allegations against the police. Such broad reasoning is insufficient to justify elevated fees in this case. Finally, the fact that Thomas and his attorneys worked together on a contingency agreement does not justify an elevated fee rate. Any missed interest on payments that would have been earned in previous years is already taken into account by calculating fees based on contemporary fee rates awarded to civil rights attorneys in the Southern District, which have continually increased over time. See Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (stating that generally speaking, though not without exception, "in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be current rather than historic hourly rates") (internal quotations omitted).

The most critical factor in the Court's determination of the appropriate fee rate—the degree of success obtained compared to what the complaint sought—also supports a reduction in requested fee rates. Thomas's Third Amended Complaint alleged federal and state claims of false arrest and excessive force, and state claims of assault and battery and respondeat superior against nine named officers, one unnamed officer, and the City of New York. The jury in Thomas's second trial returned a verdict in his favor on the excessive force claim alone against only three of the named officers.

Considering all of these factors, the Court finds an appropriate hourly fee for Zelman to be $450 and for Asher to be $400.

13

### ii. Associate attorneys' fee rates

Thomas requests fee rates of $350 an hour for attorneys Chris Soverow, Justin Denton, Matthew Lawrence, and Matthew Schommer. For attorneys Andrew Rabin and Joshua Tey, he requests fee rates of $275 an hour.

Soverow was admitted to the bar in 2009, Denton in 2011, Lawrence in 2012, and Schommer in 2013. Affirmation in Support of Application for Fees at ¶ 5, ECF No. 206. Rabin and Tey were both admitted to the bar in 2014. Id.

Current rates for junior associates in civil rights actions in the Southern District of New York vary from $200 to $300, depending on the size and reputation of the law firm and the experience of the associate. See Andrews v. City of New York, 2015 WL 4622489, at *8 (collecting cases).

Beyond the passage of time and additional experience gained since the associates performed their work, Thomas points to no reason why the requested rates should be higher than those generally awarded to associates in this district. Considering the circumstances of this case discussed above, the Court finds an appropriate hourly fee for Soverow, Denton, Lawrence, and Schommer to be $300 and an appropriate hourly fee for Rabin and Tey to be $225.

### b. Other requested fees must be reduced or denied.

Defendants argue that fees submitted for travel should be reduced and fees related to expert witnesses should be denied. Thomas does not dispute that "courts in the Second Circuit regularly reduce attorneys' fees by 50 percent for travel time," Adusumelli v. Steiner, 2013 WL 1285260, at *5 (S.D.N.Y. Mar. 28, 2013) (internal quotations omitted), nor that he billed certain travel expenses at a full-fee rate. Based on the Court's independent review of the fee records, the

14

following fees must be charged at half of the awarded rate for each attorney: Zelman: 11/24/2009, 1/22/2013, 3/11/2013; Soverow: 2/21/2010, 2/12/2010, 2/24/2010, 3/22/2010.

Thomas's requested expenses for expert fees are denied as a matter of law "because § 1988 does not allow the shifting of expert witness fees in § 1983 actions." Walker v. City of New York, 2015 WL 4568305, at *12 (citing W. Virginia Univ. Hospitals, Inc. v. Casey, 499 U.S. 83, 102 (1991)).

### c.  Defendants' remaining objections are without merit.

Defendants object to a number of other requested fees they consider unreasonable. These include expenses incurred in preparation of the current application, in connection with researching and preparing a vocational expert not ultimately called to testify at trial, in an application to add to the second trial defendants exonerated in the first trial, in review of the case by Asher in preparation for the second trial, and in meetings between counsel in preparation for the second trial. Defendants also argue that plaintiff's counsel lacks specificity in its billing entries, justifying an across-the-board percentage reduction in recoverable fees.

Based upon the Court's independent review of the submitted billing entries, such reductions are unwarranted. It is well settled that "a reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees," Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999). Given the settlement negotiations undertaken in preparation of the application, research related to the legal effect of Thomas's misconduct on a request for fees, and associated briefing, the Court finds the requested time spent on this application to be reasonable.

Further, "the proper inquiry" into an attorney's efforts as reported in a § 1988 application is "whether, in light of the circumstances of the litigation as a whole, those efforts were

15

reasonable." <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 880 (2d Cir. 1998). The objections defendants

make to requested fees were all incurred in reasonable efforts. In preparation for trial, attorneys

often develop theories and strategies for the case that will ultimately be discarded before

presentation to a jury. Such was the case with the vocational expert. Nor were additional

expenses incurred by both Asher and the other attorneys in preparation for the second trial

unreasonable, considering the nearly two-and-a-half years between the two trials. Contrary to

defendants' reading of the Court's Order for a retrial, the previously exonerated defendants were

not specifically excluded in that Order. It was therefore reasonable for Thomas to move to

include them in the second trial. Finally, the billing entries as recorded are not so vague as to

justify a fee reduction. Rather, such entries "are sufficiently concrete, when viewed in context, to

permit the court to make a judgement about the reasonableness of the total hours claimed."

<u>Raniola v. Bratton</u>, 2003 WL 1907865, at *4 (S.D.N.Y. Apr. 21, 2003).

## IV.   CONCLUSION

For the reasons described above, Defendants' Motion for Attorney's Fees is **DENIED.**

Plaintiff's Motion for Attorneys' Fees is **GRANTED IN PART and DENIED IN PART.**

Plaintiff is ordered to resubmit a calculation of fees and expenses in accordance with this Order.

Given that Thomas's attorney fees were denied in part due to their unreasonableness or

plaintiff's intentional misconduct, no fees will be awarded for the recalculation and submission.

The Clerk of Court is respectfully requested to close the motions at ECF Nos. 202 and 205.

**SO ORDERED.**

**Dated: January 25, 2015**
        **New York, New York**

                                              **ANDREW L. CARTER, JR.**
                                            **United States District Judge**